IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

THE O.N. EQUITY SALES
COMPANY,

      Plaintiff,

vs.

NORMAN D. PRINS and
CHARLENE J. PRINS, Individually
and as Trustees of the NORMAN
AND CHARLENE PRINS
REVOCABLE LIVING TRUST,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Civil File No. 07-3075 (MJD/AJB)

Marion H. Little Jr. and Michael R. Reed, Zeiger, Tigges & Little LLP, and Julie H. Firestone and Molly M. Borg, Briggs and Morgan, PA, Counsel for Plaintiff

Joel A. Goodman, Goodman & Nekvasil, PA, and Ralph V. Mitchell, Jr., Lapp Libra Thomson Stoebner & Pusch, Chartered, Counsel for Defendants

## I.    INTRODUCTION

This matter comes before the Court on Defendants Norman D. Prins and Charlene J. Prins' Motion to Compel Arbitration [Docket No. 17] and Plaintiff The O.N. Equity Sales Company's Motion for Preliminary Injunction [Docket No. 28].  On September 5, 2007, The O.N. Equity Sales Company ("ONESCO") filed a brief in opposition to Defendants' motion [Docket No. 24]; the Prinses ("Defendants") filed their reply on October 5, 2007 [Docket No. 42].  Defendants also filed their opposition to ONESCO's

motion [Docket No. 43], and ONESCO replied on October 12, 2007 [Docket No. 44]. The Court heard oral argument regarding this matter on October 24, 2007, at 10 A.M.

Defendants seek to compel ONESCO to participate in arbitration proceedings before the National Association of Securities Dealers ("NASD/FINRA")[1] to resolve claims of securities fraud by Gary Lancaster, one of ONESCO's former representatives. In its motion papers, ONESCO seeks an order enjoining Defendants from proceeding with the NASD/FINRA action and from filing further claims before the NASD/FINRA related to the Lancorp fund. At oral argument, ONESCO's attorney clarified the nature of the relief it seeks. ONESCO asks the Court to enjoin any claims that arise from events that took place before or after the time in which Mr. Lancaster was their registered representative. With respect to any of Defendants' claim that stem from the time during which Mr. Lancaster was their registered representative, ONESCO asks for an evidentiary hearing on disputed factual issues and a reasonable time to conduct discovery.

---

[1] On July 30, 2007, NASD/FINRA changed its name to Financial Industries Regulatory Authority or "FINRA." To prevent confusion, the Court refers to the organization as "NASD/FINRA" throughout this opinion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The two motions at issue mirror one another and share an identical factual milieu.  The case arises from claims that Defendants, individually and as trustees of a revocable living trust, filed against ONESCO, for liability based on the fraudulent sale of securities.  Defendants allege that Mr. Lancaster organized the Lancorp Financial Fund Business Trust ("Lancorp") in March 2003 and subsequently served as Lancorp's trustee. (Compl. ¶¶ 9-10.)  According to the related Private Placement Memorandum, 50,000 Investor Shares were to be sold through a private placement offering to no more than 100 investors at $5,000 per share. (Id.)  The Private Placement Memorandum also stated that Lancorp would amend or supplement the memo if any material changes to the offering occurred before closing.  (Id.)

Potential investors were asked to review the Private Placement Memorandum and execute a Subscription Agreement.  (Compl. ¶ 11, 18, Exs. B, C.)  Under the terms of the Subscription Agreement, all amounts paid by investors were deposited into an escrow account to be held until the closing date.  By signing the Subscription Agreement, investors were bound not to "cancel, terminate or revoke" the agreement. (Id.)  The terms of the Private Placement Memorandum, however, allowed Lancorp to withdraw, cancel or modify the offering without notice.  (Compl. ¶ 10, Ex.

A.)  On January 21, 2004, Defendants, in their capacities as Trustees of the Norman and Charlene Prins Revocable Living Trust, executed a Subscription Agreement and sent an initial deposit of $25,000 to Mr. Lancaster.  (Compl. ¶ 32, Ex. B.)

Mr. Lancaster became a registered representative of ONESCO on March 23, 2004.  (Compl. ¶ 8.)  ONESCO, a member of the NASD/FINRA, is a full service retail broker-dealer offering a variety of investment products through more than 1,000 registered representatives.

On April 5, 2004, Mr. Lancaster wrote a letter to investors, including Defendants, notifying them of a material change to a condition of their investment.  (Mr. Lancaster First Dec. ¶ 5, Ex. B.)  Specifically, Landcorp replaced the planned insurance component with a validated, written bank obligation.  The letter also stated that the fund was to become effective shortly and that investors should: (1) acknowledge the changes in the offering and confirm their intention to participate; or (2) request withdrawal of their funds.  On April 8, 2004, Defendants acknowledged the changes to the insurance component and confirmed their subscription.  (Goodman Dec., Ex. 3.)  Mr. Lancaster allegedly continued to hold Defendants' money in escrow, because the fund required a five million dollar investor commitment before it became effective.  By letter dated June 14, 2004, Mr. Lancaster notified Defendants that the Lancorp fund

4

"officially became effective as of May 14, 2004." (Mr. Lancaster First Dec. ¶ 9, Ex. F.)

Defendants sent Mr. Lancaster further checks to invest in Landcorp: a cashier's check for $10,000 on June 8, 2004; a cashier's check for $15,000 on July 21, 2004; and a cashier's check for $10,000 on September 20, 2004.  In total, Defendants invested around $190,000 in Landcorp. (Goodman Dec., Ex. 3.)  Meanwhile, on January 3, 2005, Mr. Lancaster's relationship with ONESCO was terminated.  (Id.)  On or about June 22, 2005, Defendant Charlene Prins certified a separate subscription agreement that she executed on behalf of an IRA in her name.  (Compl. ¶ 18, Ex. C.)

It is undisputed that Mr. Lancaster invested significant Lancorp funds in "Megafund"—a Texas-based Ponzi scheme, causing Lancorp to fail and enter receivership.  (Compl. ¶ 12.)  On March 16, 2007, a Landcorp investor filed an arbitration action against ONESCO with the NASD/FINRA, Case No. 07-00937.  (Compl. ¶ 34.)  The original statement of claims was amended on April 20 and April 25, 2007, to add other investors, including Defendants.

Consequently, ONESCO filed the present action on June 25, 2007, seeking an order enjoining Defendants, both preliminary and permanently, from proceeding with respect to the arbitration action.  In addition, ONESCO filed a Motion to Authorize the Parties to Engage in Immediate

Discovery on the Issue of Arbitrability. [Docket No. 10]. Magistrate Judge Arthur J. Boylan denied that motion on October 17, 2007. ONESCO promptly filed objections to the Magistrate Judge's order. [Docket No. 48].

## III.   THE PARTIES' ARGUMENTS

Defendants contend that their subscription was not final until May 14, 2004, after the changes to the insurance component of the investment and subscriptions for the fund units were filled in their entirety. In other words, Defendants claim that their investment was not finalized until after Mr. Lancaster became associated with ONESCO. In addition, Defendants claim they engaged in other financial transactions with Mr. Lancaster during his tenure at ONESCO. Finally, Defendants allege that ONESCO failed in its duty to properly supervise Mr. Lancaster during his association with the brokerage firm. For all of these reasons, Defendants contend they were customers of ONESCO, through Mr. Lancaster, and have the right to compel ONESCO to arbitrate their claims under rules promulgated by NASD/FINRA.

ONESCO contends that Defendant's arbitration claims are premised on Mr. Lancaster's alleged misrepresentations in the private placement memorandum, which was reviewed and accepted by Defendants before Mr. Lancaster became associated with ONESCO. In addition, Mrs. Prins' separate subscription agreement was signed after Mr. Lancaster's time at

6

ONESCO.  Therefore, ONESCO claims that Defendants were not their customers at the time of those transactions, and there is no basis to compel ONESCO to participate in arbitration proceedings.  Therefore, ONESCO requests that the Court sever any claims based on events that took place before or after Mr. Lancaster was their representative and enjoin Defendants from proceeding with those claims.  ONESCO also suggests that there are unresolved and unexplored factual issues relating to the fraud claims, and the Court should not rely solely on the allegations in Defendants' briefing papers to decide the motion to compel.

## IV.     MOTION TO COMPEL ARBITRATION

### A.     Legal Standard

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (citation and internal quotations omitted).  In reaching its decision on the issue of arbitrability, the Court should not consider the merits of the parties' claims. AT&T Tech., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649-50 (1986).  When considering a motion to compel arbitration, then, courts must inquire: (1) Is there a valid arbitration agreement? and (2) Does the particular dispute fall within the terms of that agreement?  See Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004).  Upon a determination

that the parties entered into a binding arbitration agreement covering the dispute at issue in the lawsuit, a district court shall "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

### B.     Analysis

It is undisputed that there was no contract between Defendants and ONESCO, therefore, there is no contractual arbitration clause binding ONESCO to arbitrate Defendants claims. ONESCO's NASD/FINRA membership, however, binds ONESCO to the organization's rule and regulations, including the NASD/FINRA Code. See, e.g., Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc., 264 F.3d 770, 771 (8th Cir. 2001). The NASD/FINRA Code states, in pertinent part:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

NASD Code of Arbitration Procedures Rule 10301(a). Thus, despite the lack of an express arbitration agreement between the parties, there is a valid arbitration agreement pursuant to NASD/FINRA Rule 10301 if: (1) claimants were the member's "customers"; and (2) the dispute arises "in connection with [the member's] business" or "in connection with the

activities of associated persons." Id.; see also Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 820 (11th Cir. 1993); Washington Square Sec., Inc. v. Sowers, 218 F. Supp. 2d 1008, 1116-17.  Notably, ONESCO does not dispute that they are bound by the NASD/FINRA arbitration rules with respect to their customers, nor does ONESCO seek to enjoin arbitration with every Lancorp investor.  (Def. Memo. to Compel at 2.)

The parties argue at length in their briefs about whether the arbitrability of Defendants' claims under the NASD/FINRA Code is an issue concerning contract existence or scope.  It is not necessary for the Court to address these arguments to reach its ruling in this case; under the Eighth Circuit test for compelling arbitration, the Court need determine only whether Defendants were ONESCO's customers and whether their claims arise in connection with ONESCO's business or Mr. Lancaster's activities.

### 1.   Whether Defendants were ONESCO's "Customers"

The Eighth Circuit has determined that a "customer" within the meaning of Rule 10301 is one engaged in a business relationship that involved "some brokerage or investment relationship between the parties." Innovex, 264 F.3d at 772.  An individual or entity that solely receives financial advice, without investment or brokerage services, is excluded from the definition of "customer."  Id. at 772-73.  Therefore, under the facts of the case, Defendants were clearly Mr. Lancaster's customers, because Mr.

9

Lancaster provided investment services to Defendants when he sold them shares in the Lndcorp fund.

In addition, under the Rule's plain meaning, a Rule 10301(a) "customer" includes an associated person's customer.  Therefore, the NASD/FINRA allows customers of an associated person to compel arbitration against an NASD/FINRA member.  <u>Multi-Financial Sec. Corp. v. King</u>, 386 F.3d 1364, 1368, 1370 (11th Cit. 2004) ("When an investor deals with a member's agent or representative, the investor deals with the member."); <u>accord</u> <u>The O.N. Equity Sales Co. v. Pals</u>, --- F. Supp. 2d ---, 2007 WL 2506033 at *5 (N.D. Iowa Sept. 6, 2007)  (citing <u>Multi-Financial</u>).  The parties' dispute, however, centers on a more narrow issue—whether Mr. Lancaster was associated with ONESCO when the events underlying Defendant's claims occurred.

ONESCO argues that their relationship with Mr. Lancaster began on March 23, 2004.  Because Defendants had already reviewed the Private Placement Memorandum, signed the Subscription Agreement, and invested their initial $25,000 before March 23, 2004, ONESCO denies any customer relationship and any responsibility to enter arbitration with Defendants.  ONESCO contends that any material representations or omissions that would give rise to an action for fraud under the Securities laws were made to Defendants at least two months prior to March 23.  Moreover, ONESCO

10

contends that there is insufficient evidence to show that Mr. Lancaster made any material misrepresentations or omissions to Defendants, because someone unaffiliated with ONESCO initially solicited them to invest in the Lancorp fund.  (Pl. Motion for Preliminary Inj., Exs. E, F.)  Finally, ONESCO renews its request for discovery to uncover further facts on the question of who sold the securities to Defendants.

ONESCO cites extensively to three cases in support of its contentions: Hornor, Townsend & Kent, Inc. v. Hamilton, 2004 WL 2284503 (N.D. Ga. Sept. 30, 2004), Gruntal & Co., Inc. v. Steinberg, 854 F.Supp. 324 (D.N.J. 1994), and Wheat, First Securities, Inc. v. Green, 993 F.2d 814 (11th Cir. 1993).  The District Court for the Western District of Washington explored this issue and parsed these cases in a related action, The O.N. Equity Sales Co. v. Venrick, --- F. Supp. 2d ---, 2007 WL 2705859 (W.D. Wash. 2007).  The Venrick court noted:

> These cases, however, involved allegations of wrongdoing that all arose before a NASD/FINRA member become affiliated with [an] allegedly fraudulent individual or institution.  In that context, the quotations from those cases cited by ONESCO carry force. . . .  [However, t]his is not a case where the activity at issue pre-dated the involvement of the NASD/FINRA member.

The Court adopts this analysis.  Here, as in Venrick, there is ample evidence that Defendants were customers of Mr. Lancaster's during his tenure at ONESCO.  The record, even without additional discovery, shows that a term

of the Lancorp Fund private placement offering was materially changed in April 2004, a month after Mr. Lancaster's association with ONESCO commenced.  The April 5, 2004 letter that Mr. Lancaster sent after changing the insurance conditions required all potential investors to confirm their subscriptions or receive a return of their funds.  In addition, Mr. Lancaster held all funds invested in Lancorp until May 2004, when the private placement offering finally closed.  Moreover, Defendants kept sending Mr. Lancaster additional funds to invest in Lancorp while he was associated with ONESCO.  ONESCO does not appear to dispute these events.

Ample evidence shows that Defendants had an investment relationship with Mr. Lancaster after he became associated with ONESCO. Therefore, Defendants were ONESCO's customers through their association with Mr. Lancaster.

### 2. Whether the Dispute Arose in Connection with ONESCO's Business or the Activities of an Associated Individual

With respect to the second prong of the inquiry, ONESCO again claims that any conduct giving rise to Defendants' dispute arose "in connection with" the business relationship between Defendants and Mr. Lancaster before Mr. Lancaster became associated with ONESCO. Therefore, according to ONESCO, Defendant's dispute is not connected to any business relationship with ONESCO.

Defendants note that the activities and exchanges described above that took place between Mr. Lancaster and Defendants after Mr. Lancaster became associated with ONESCO also preclude ONESCO's arguments on this second prong.  Mr. Lancaster asked Defendants to confirm their investment in the Landcorp fund and received their checks as Trustee of the Lancorp fund.  Defendants have satisfied this prong of the test.

Moreover, the allegation that ONESCO failure to properly supervise Mr. Lancaster while he was their registered representative lies at the heart of Defendants' claims against ONESCO.  "The NASD/FINRA requires that its members supervise the activities of their associated persons, as part of their business." King, 386 F.3d at 1370; Washington Square Sec., Inc. v. Sowers, 218 F. Supp. 2d 1108, 1117 (D. Minn. 2002) (citations omitted) ("It is typically the brokerage firm's duty to exercise supervision of their registered representatives.").  Therefore, "negligent supervision satisfies the Code's second arbitration condition." King, 386 F.3d at 1370; see also NASD/FINRA Rule 10301(a).  ONESCO and Defendants disagree about whether Mr. Lancaster informed ONESCO about his involvement with the Lancorp fund.  (Compare Mr. Lancaster Dec. ¶ 4, Exs. D, E with NASD/FINRA Letter of Acceptance, Waiver and Consent, Ex. D to Pl. Motion for Preliminary Injunction.)  Regardless of whether ONESCO knew about the Lancorp fund, ONESCO was obliged to supervise Mr. Lancaster

while he was their registered representative.  Defendants' allegations of failed supervision arise in connection with ONESCO's business.  See, e.g., USAllianz Sec., Inc. v. Southern Mich. Bancorp, Inc., 290 F. Supp. 2d 827, 831 (W.D. Mich. 2003) (citation omitted) ("Whether [the investors] have alleged meritorious claims is not pertinent to this inquiry.  [The investors'] allegations clearly implicate USAllianz for its conduct upon affiliating with [the broker].  The claim of failure to supervise 'arises in connection with the business' of USAllianz for the purposes of Rule 10301(a).").  Therefore, the second prong of the test for compelling arbitration is met.

Finally, the Court declines to accept ONESCO's invitation to sever claims that are based on activities that took place before Mr. Lancaster's association with ONESCO or after his departure.  Defendants' claims stem from a series of transactions with Mr. Lancaster involving a single investment opportunity.  It is up to the arbitrator to decide the case on its merits and to determine which, if any, of the events give rise to liability on the part of ONESCO.  Commc'n Workers, 475 U.S. at 649-50.  The Court will grant Defendants' motion to compel arbitration.

## V.     MOTION FOR PRELIMINARY INJUNCTION

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions.  Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc).  This Court must consider:

14

(1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits.  Id.  "The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability [of success on the merits] test."  Id. at 113.

The movant carries the burden of establishing that a preliminary injunction is appropriate.  Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006).  "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh toward granting the injunction."  Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987) (citation omitted).

### A. Likelihood of Success on the Merits

Likelihood of success on the merits requires that the movant find support for its position in governing law.  Baker Elec. Co-op., Inc. v. Chaske, 28 F.3d 1466, 1473-74 (8th Cir. 1994).  Because the Court finds that the parties' dispute should be resolved in arbitration, ONESCO is unable to establish a "likelihood of success on the merits" in regard to its claim that the parties' dispute is not arbitrable.  Therefore, this factor weighs strongly

in Defendants' favor. However, likelihood of success on the merits is only one prong of the four-part Dataphase test.

### B. Irreparable Harm and Balance of Harm with Injury to Other Party

When a party is compelled to arbitrate a dispute that it has not agreed to arbitrate, that party would suffer irreparable harm. Howsam, 537 U.S. at 83 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); McLaughlin Gormley King Co. v. Terminix Intern. Co., L.P., 105 F.3d 1192, 1194 (8th Cir. 1997) (identifying the cost of defending the arbitration and legal action to challenge unfavorable arbitration awards as a source of irreparable harm). However, Defendants also stand to suffer substantial injury if prevented from proceeding to arbitration on the merits of their claims.

In the absence of any likelihood of ONESCO's success on the merits, there is no threat of irreparable harm to ONESCO by compelling it to arbitrate. With no threat of irreparable harm to ONESCO, and an existing threat of substantial injury to Defendants if the Court denies their motion, the second and third prongs of the Dataphase test also weigh heavily in favor of Defendants.

### C.     Public Interest

Congress has expressed a "clear intent, in the [Federal] Arbitration Act, to move the parties in an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983); Innovex, 264 F.3d at 773 ("[W]here the parties have agreed to arbitrate, there is a strong federal policy in favor of arbitration."). On the other hand, no public interest is advanced by compelling parties to arbitrate their disputes if they never agreed to do so. Here, because the Court finds the dispute arbitrable, public policy concerns weigh in favor of Defendants. Therefore, balancing the four Dataphase factors, the Court finds it must deny Plaintiff's motion for injunctive relief.

## VI.   CONCLUDING MATTERS

On August 27, 2007, Plaintiff filed its Motion for an Order Authorizing The Parties to Engage in Immediate Discovery on the Issue of Arbitration. [Docket No. 10]. On October 17, 2007, Magistrate Judge Boylan denied Plaintiff's motion. [Docket No. 47]. Plaintiff filed objections to the Order on October 23, 2007. [Docket No. 48].

The Court must modify or set aside any portion of the Magistrate Judge's Order found to be clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule 72.1(b)(2).

Because the Court finds that this dispute should proceed to arbitration without further discovery, Magistrate Judge Boylan's Order is neither erroneous nor contrary to law.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendants September 4, 2007 Motion to Compel Arbitration [Docket No. 17] is **GRANTED**.

2. Plaintiff's September 24, 2007 Motion for Preliminary Injunction [Docket No. 28] is **DENIED**.

3. Magistrate Judge Boylan's October 17, 2007 Order denying Plaintiff's Motion for an Order Authorizing the Parties to Engage in Immediate Discovery on the Issue of Arbitrability is **AFFIRMED**.

4. Because the Court has addressed all of the parties' motions and ordered the parties to arbitration, this case is **DISMISSED** from the docket.

Dated: November 6, 2007

                                          BY THE COURT:

                                          s / Michael J. Davis
                                          The Honorable Michael J. Davis
                                          United States District Court Judge